# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

HALEY JOHNSON,

      Plaintiff,

    v.

FRANK BISIGNANO, Commissioner of Social Security[1]

      Defendant.

_____/

Case No.  1:25-cv-00446-EGC

**ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND REMANDING THE ACTION IN FAVOR OF PLAINTIFF**

(Doc. 11)

## I.      INTRODUCTION

Plaintiff Haley Johnson ("Plaintiff") seeks judicial review of a final decision of the Commissioner of Social Security (the "Commissioner") denying her application for supplemental security income ("SSI") under the Social Security Act (the "Act"). (Doc. 1).  Plaintiff's claim for disability stems from conversion disorder causing seizures, depressive disorder, and anxiety disorder.  (*Id.* ¶ 6).  The matter is currently before the Court on the parties' briefs, which were submitted, without oral argument, to the Honorable Erin E. Guy Castillo, United States Magistrate Judge.[2]

Having considered the briefing and record in this matter, the Court finds the decision of the Administrative Law Judge ("ALJ") is not supported by substantial evidence in the record as a whole

---

[1] On May 7, 2025, Frank Bisignano was named Commissioner of the Social Security Administration. *See* https://www.ssa.gov/history/commissioners.html.  He is therefore substituted as the defendant in this action.  *See* 42 U.S.C. § 405(g) (referring to the "Commissioner's Answer"); 20 C.F.R. § 422.210(d) ("the person holding the Office of the Commissioner shall, in [their] official capacity, be the proper defendant.").

[2] On May 2, 2025, the parties consented to the jurisdiction of a U.S. Magistrate Judge for all further proceedings in this action, including trial and entry of judgment, pursuant to 28 U.S.C. 636(c)(1).  (*See* Doc. 9).

or based upon proper legal standards. Accordingly, this Court will recommend reversing the agency's determination to deny benefits and remanding the matter for further proceedings.

**II.        BACKGROUND**

Plaintiff was born in 2000.  (Administrative Record ("AR") 195).  She earned a high school diploma.  (AR 230).  Plaintiff filed an application for SSI, alleging she became disabled on September 8, 2018.  (AR 195–200).  Plaintiff worked briefly at Target and Staples after she graduated from high school, but testified that she only worked at Target "a few days" and at Staples "a couple months" for one or two days a week during that time period.  (AR 32).  Plaintiff has no past relevant work.  (AR 19).

On April 3, 2022, Plaintiff protectively filed an application for SSI, alleging disability beginning September 8, 2018.  (AR 195).  Plaintiff's claim for disability stems from conversion disorder causing seizures, depressive disorder, and anxiety disorder.  (Doc. 1 ¶ 6).  The claim was denied initially on September 1, 2022, and upon reconsideration on April 13, 2023.  (AR 10).  On March 21, 2024, the ALJ issued an unfavorable decision denying Plaintiff's claim on the basis that Plaintiff has not been under a disability, as defined in the Social Security Act, since April 3, 2022, the date the application was filed.  (AR 20).  This appeal followed.

Plaintiff asks that the Court reverse the decision of the Commissioner, find that Plaintiff is entitled to disability benefits under the provisions of the Social Security Act, or remand the case for further hearing.  (Doc. 1 at 2).

A.    **Relevant Evidence of Record**[3]

The relevant medical record was reviewed by the Court and will be referenced below as necessary to this Court's decision.

1. **WAIS, WMS-IV, and Consultative Examination by Carol A. Johnson-Schroetlin, Psy.D.**

a.  **Consultative Examination by Carol A. Johnson-Schroetlin, Psy.D.**

On June 21, 2022, Plaintiff underwent a complete psychological evaluation and was tested

---

[3] Because the parties are familiar with the medical evidence, it is summarized here only to the extent relevant to the contested issues.

2

via the Wechsler Adult Intelligence Scale - 4th Edition and the Wechsler Memory Scale - 4th Edition by Carol A. Johnson-Schroetlin, Psy.D.  (AR 722-29).  Dr. Johnson-Schroetlin noted that Plaintiff reported having "micro-seizures, conversation disorder, and anxiety."  (AR 723).  Plaintiff stated that she gets "panic attacks, sometimes, and when I have a seizure, my hands get numb, and I don't remember anything."  (AR 724).  Plaintiff reported that her mental health symptoms were "moderate to severe."  (*Id.*)  According to the report, Plaintiff "denied having limitations with daily self-care," "is independent for basic [activities of daily living], and helps with household chores and in preparing food," "cannot make change at the store," and "spends an average day doing; [sic] 'looking for a job and taking care of my farm.'"  (AR 724).

Dr. Johnson-Schroetlin reported that Plaintiff's "[a]ttire was appropriate," "[g]rooming was good," Plaintiff "presented in a friendly manner," "[e]ye contact was good and facial expression was normal," Plaintiff "interacted cooperatively with the examiner throughout the evaluation," and "[n]o bizarre behavior was observed."  (*Id.*)  In regard to Plaintiff's mental status, Dr. Johnson-Schroetlin reported that Plaintiff "was alert and oriented," her speech was normal, "[m]ood was good," "[a]ffect was full in range," "[a]ttention and concentration was impaired," "[f]und of knowledge was slightly impaired," "[m]emory for recently learned information was adequate," and "[a]bility for abstraction was adequate."  (AR 724-25).  Dr. Johnson-Schroetlin further reported that Plaintiff's "insight and judgment appeared to be adequate," her "thought process was linear," her "[t]hought content was normal," and Plaintiff "denied having hallucinations or delusions."  (AR 725).

Dr. Johnson-Schroetlin's medical source statement and functional assessment made several conclusions regarding Plaintiff's work-related abilities.  (AR 728).  Dr. Johnson-Schroetlin found that with performing simple and repetitive tasks, the claimant is not significantly limited.  (AR 728).  Dr. Johnson-Schroetlin found that with performing detailed and complex tasks, maintaining regular attendance in the workplace, ability to perform work activities on a consistent basis, ability to perform work activities without special or additional supervision, ability to complete a normal workday or workweek without interruptions resulting from the Plaintiff's psychiatric condition, ability to accept instructions from supervisors, and ability to interact with coworkers and with the public, Plaintiff is mildly limited due to anxiety and psychological challenges or cognitive

challenges.  (AR 728).  Dr. Johnson-Schroetlin further found that regarding her ability to deal with the usual stresses encountered in competitive work environment, Plaintiff is mildly to moderately limited due to anxiety and psychological challenges.  (AR 729).

### b. WAIS

Plaintiff's WAIS-IV[4] scores ranged from "[b]orderline" to "extremely low" and resulted in a percentile rank from 0.3 to 7 percentile.  (AR 725-26).  Plaintiff scored in the seventh percentile (borderline) on the Verbal Comprehension Index, lower than the first percentile (extremely low) on the Perceptual Reasoning Index, in the first percentile (extremely low) on the Working Memory Index, and lower than the first percentile (extremely low) on the Processing Speed Index.  (AR 725-26).  In total, Plaintiff's Full Scale IQ score was in the first percentile (extremely low) of test takers, indicating that Plaintiff's "overall intellectual ability" falls within the "Extremely Low range."  (AR 726).

Dr. Johnson-Schroetlin's report summarized the WAIS-IV results as follows:

> The claimant's strengths were found in verbal concept formation, verbal reasoning, and knowledge acquired.  The claimant's weakness were found in her perceptual and fluid reasoning, spatial processing, and visual-motor integration.  These scores suggest that in a work setting the claimant will have no significant difficulties completing basic, simple, repetitive tasks.  The claimant may experience difficulties with multi-step, complex tasks.

(AR 727).

### c. WMS-IV

Plaintiff's WMS-IV[5] scores were all in the "extremely low" range and resulted in a percentile rank from 0.1 to 0.3 percentile.  (AR 727).  Plaintiff scored lower than first percentile (extremely

---

[4] The WAIS-IV test "groups an individual's abilities into four global areas: Verbal Comprehension Index (VCI) which is a measure of verbal concept information, verbal knowledge and ability; Perceptual Reasoning Index (PRI), which reflects the ability to interpret and organize visually perceived material and visual motor integration; Working Memory Index (WMI), which measures the capacity to remember and manipulate orally presented information in short-term memory; and Processing Speed Index (PSI), which refers to cognitive processing efficiency that measures short term visual memory, attention, and visual motor abilities and coordination. These four indices comprise the Full Scale IQ (FSIQ)."  (AR 725).

[5] The WMS-IV "provides a detailed assessment of clinically relevant aspects of memory functioning for auditory and visual memory abilities," and is composed of four subtests, including "the Auditory Memory Index (AMI) examines the ability to remember orally presented information. The Visual Memory Index (VMI) examines the ability to remember visually-presented information. The Immediate Memory Index (IMI) explores the ability to remember both visually and orally presented information immediately after it is presented. The Delayed Memory Index (DMI) examines the ability to remember both visual and orally presented information after a brief delay (20-30 minutes)."  (AR 727).

low) on the Immediate Memory Index, lower than first percentile (extremely low) on the Delayed Memory Index, lower than first percentile (extremely low) on the Auditory Memory Index, and lower than first percentile (extremely low) on the Visual Memory Index.  (AR 728).

Dr. Johnson-Schroetlin's report summarized the WMS-IV results as follows: "[o]verall, the claimant's test results indicate that the claimant demonstrates memory deficits."  (*Id.*)

**2.  Medical Source Opinion of State Agency Consultant Dr. Payne-Gair**

On August 31, 2022, Celine Payne-Gair, Ph.D., conducted a consultative examination of Plaintiff.  (AR 55-60).  Dr. Payne-Gair performed an analysis of the evidence and made a finding related to Plaintiff's adult medically determinable impairments, finding that Plaintiff had the following severe impairments: (1) Other Disorders of the Nervous System, (2) Anxiety and Obsessive-Compulsive Disorders, (3) Depressive, Bipolar and Related Disorders, (4) Somatic Symptom and Related Disorders, and (5) Neurodevelopmental Disorders.  (AR 59.)

Dr. Payne-Gair found that Plaintiff had a mild limitation regarding her ability to understand, remember, or apply information; a mild limitation regarding her ability to interact with others; a moderate limitation in her ability to concentrate, persist, or maintain pace; and a moderate limitation in her ability to adapt or manage herself.  (*Id.*)  Dr. Payne-Gair noted that "all evidence . . . has been considered and found persuasive for no more than moderate limitations."  (AR 60).

**3.  Medical Source Opinion of State Agency Consultant Dr. Reddy**

On March 29, 2023, state agency psychological consultant Leela Reddy, M.D., reviewed the updated record upon reconsideration of Plaintiff's disability determination.  (AR 80-82).  Dr. Reddy noted that upon reconsideration, Plaintiff "alleges no worsening," that Plaintiff is "on Prozac, hydroxyzine and Ativan," and that as of November 2022 there were "some improvement in depression," Plaintiff is taking Lamictal and is "not seeing therapist."  (AR 81).  Dr. Reddy noted that Plaintiff's attitude was "cooperative," her behavior did not show any psychomotor agitation or retardation or tremors, Plaintiff's mood was "ok," her affect was "constricted," her thought process was "logical," that Plaintiff "denies thoughts of suicide, denies thoughts of homicide, no psychosis," that Plaintiff's insight appeared "poor," and that Plaintiff's Prozac was increased.  (AR 82).

Dr. Reddy found that "[t]he initial decision is consistent with the file evidence and is

persuasive. There is no objective or functional evidence showing a substantial change in the claimant's mental condition(s) that would support worsening." (*Id.*)

**B.    Administrative Proceedings**

The Commissioner denied Plaintiff's application for benefits initially on August 31, 2022, and again on reconsideration on March 30, 2023. (AR 47-93). Consequently, Plaintiff requested a hearing before an ALJ. (AR 125). The ALJ conducted a hearing on January 16, 2024. (AR 25-46). Plaintiff appeared at the hearing with her attorney David Shore and testified as to her alleged disabling conditions and work history. (*Id.*)

The ALJ concluded Plaintiff has not been under a disability, as defined in the Social Security Act, since April 3, 2022, the date the application was filed. (AR 20). Plaintiff sought review of this decision before the Appeals Council, which denied review on March 19, 2025. (AR 1-6). Therefore, the ALJ's decision became the final decision of the Commissioner. 20 C.F.R. § 404.981.

**1.  Plaintiff's Testimony**

On January 16, 2024, ALJ Joseph Marcee held a remote hearing via Microsoft Teams. (AR 25-46). Plaintiff appeared at the hearing via Microsoft Teams with her attorney David Shore and testified about her alleged disabling conditions and work history. (AR 27-40). Kelly Bartlett, an impartial vocational expert, appeared at the hearing via Microsoft Teams.

In response to the ALJ's questions, Plaintiff testified that she graduated from high school. (AR 32). Plaintiff briefly worked at Target and Staples, working at Target for "just a few days" and Staples for "a couple months." (*Id.*) When asked how much she earned per month at Staples, Plaintiff responded "[p]robably like 100, I'm pretty sure . . . I think I worked about like one or two days a week." (*Id.*) Plaintiff testified that she received accommodations for a learning disability in school. (AR 32-33) ("I had an IEP"). She took one college class and received a C. (AR 33).

Plaintiff's attorney asked Plaintiff about her reading and verbal ability. (AR 39) ("As far as reading, how are you when it comes to reading like let's say a cereal box? Can you read that and understand directions?") Plaintiff stated that she was capable of reading a cereal box but had issues with reading comprehension. (AR 40) ("[S]ometimes I can't comprehend stuff. And I have to read the directions like a few times to understand it.") Plaintiff testified that she is able to follow a

conversation and is able to follow TV shows. (*Id.*) Plaintiff testified that she "used to like to read books," but stopped reading because she "can't comprehend them very well" and "never understood what the story says and stuff." (*Id.*)

Plaintiff lives with her parents and sister, who was twenty-eight years old at the time of the hearing. (AR 33). Plaintiff has four dogs and cares for them. (AR 33-34) ("Q: Do you walk the dogs and care for the dogs? A: I care for them. But we live on 600 acres, so they just run around.") Plaintiff does not drive. (AR 34). Plaintiff testified that the last time she drove was when she took a driving test "one or two years ago." (AR 34). Plaintiff stated that she passed the permit test, but "never took the driving portion." (AR 35).

Plaintiff does not go shopping alone but does go shopping with her family members. (AR 34). Plaintiff occasionally goes to restaurants or antique stores with her sister. (AR 36-37). When asked whether there are any activities that she does away from home on her own, Plaintiff stated that she "always ha[s] someone with me." (AR 36). Plaintiff stated that she does not have any friends that she sees. (*Id.*) When asked what she does when she's home alone, Plaintiff testified that she cares for her animals, goes on walks, watches TV, and uses her phone. (AR 37).

The ALJ asked Plaintiff whether it was accurate that the medication for her seizures seemed to have her seizures under control. (AR 34-35). Plaintiff stated that the seizure medication is working, but that she also has panic attacks. (AR 35) ("The seizures medicine is working. But I also have panic attacks. And I think that's why I take — also take the seizure medicine, is for both.") When asked when the last time she had a panic attack, Plaintiff indicated that she had a panic attack the day before the hearing due to her grandmother's health issues. (*Id.*) ("Q: . . . When was the last one before your grandmother? A: I didn't have any because I didn't know she was sick until like a week ago. So, I didn't have any before then.") Later, when questioned by her own attorney, Plaintiff testified that she last had a seizure "one or two months ago" due to the stress of a job interview. (AR 36). When asked when she last had a seizure prior to the date of the interview, Plaintiff states that she had another seizure "[p]robably like six months to a year" prior to the interview. (*Id.*) When asked how often she has panic attacks, Plaintiff testified that it happens in "really stressful situations." (*Id.*)

Plaintiff further testified that "one of the reasons how my seizure and panic disorder developed was because of my marriage . . . I was always stressed out and nervous and scared." (AR 38). She stated that she gets "flashbacks from my marriage," which she characterized as a negative time in her life. (AR 38-39). Plaintiff's attorney asked questions about Plaintiff's prior substance use of marijuana or other drugs and alcohol. (AR 39). Plaintiff testified that she has "quit everything" but will "very rarely" have a glass of wine with her sister. (*Id.*)

When asked to state her current physical problems, Plaintiff testified that her weight gain has been a problem, along with chest pains and shortness of breath that she characterized as not "too serious" that she thinks is "due to my weight." (AR 37-38).

Plaintiff's attorney questioned Plaintiff about her mental health. (AR 39). Plaintiff stated that she recently was prescribed Lexapro for her depression. (*Id.*) Plaintiff states that it has helped her, but she has not "been taking them recently because I also take those two other medicines, and I don't really like to take a lot of medicine at once." (*Id.*)

### 2. Vocational Expert's Testimony

A Vocational Expert ("VE") also testified at the hearing. (AR 40-45). The ALJ elicited testimony from the VE regarding hypothetical questions.

For the first hypothetical, the ALJ asked whether there would be any jobs in the national economy for an individual the same age, education, and vocational experience as Plaintiff with the following limitations: (1) can never be exposed to environmental hazards such as high exposed places, moving mechanical parts, or open bodies of water, (2) can understand and remember simple instructions, (3) can have frequent interactions with supervisors and coworkers and occasional interactions with the public, (4) can deal with occasional changes in a routine work setting, and (5) cannot drive. (AR 41-42). The ALJ clarified that the VE should consider light jobs. The VE indicated that there would be jobs for this hypothetical person, including working as a routing clerk (DOT code 222.687-022), price marker (DOT code 209.587-034), or small parts assembler (DOT code 706.684-022). (AR 42).

In the second hypothetical, the ALJ asked whether the same hypothetical individual would be able to perform such jobs if the individual was absent two times per month. (*Id.*) The VE testified

that "[t]wo absences a month in the unskilled labor market is not tolerated by employers," and that such limitation would be work preclusive.  (*Id.*)

On cross-examination by Plaintiff's attorney, the VE was asked whether the hypothetical individual would be able to perform any jobs if the individual "would be off task 15 percent or more in the workplace."  (AR 43).  The VE testified that such an individual would be "unable to perform any jobs in the national economy."  (*Id.*)  The VE was then asked whether there would be any jobs available for an individual would "need redirection and would require supervision."  (*Id.*)  The VE testified that "the fact that the supervisor would be needed on a frequent basis, it's not acceptable for competitive employment, sounds more like supported employment."  (*Id.*)  The ALJ then asked the VE to define what she meant by "frequent supervision."  (AR 44).  The VE stated that this would include supervision for "up to a third of the day."  (*Id.*)

**C.      The ALJ's Decision**

In a decision dated March 18, 2024, the ALJ found that Plaintiff was not disabled.  (AR 10-20).  The ALJ conducted the five-step disability analysis set forth in 20 C.F.R. § 404.1520.  (AR 12-18).  The ALJ decided that Plaintiff had not engaged in substantial gainful activity since April 3, 2022.  (AR 12).

**1.  The ALJ's Step Two Determination**

At step two, the ALJ found Plaintiff's following impairments to be severe: conversion disorder causing seizures, depressive disorder, and anxiety disorder.  (AR 12-13).  The ALJ did consider the impairments of incontinence, obesity, and attention deficit hyperactive disorder (ADHD), but did not find them to constitute a severe impairment.  (*Id.*)

The ALJ considered the severity of Plaintiff's mental impairments and found that they, "considered singly and in combination, do not meet or medically equal the criteria of listings 12.04, 12.05, 12.06, or 12.07."  (AR 13).  In making a determination of non-severity at Step Two, the ALJ considered the "Paragraph B" criteria[6] and concluded that the evidence failed to establish the

---

[6] The Social Security regulations establish four functional areas, sometimes referred to as "Paragraph B" criteria, that are to be considered in evaluating the severity of limitations associated with mental impairments: "understanding; remembering or applying information; interacting with others; concentrating, persisting or maintaining pace; and adapting oneself." 20 C.F.R. § 416.920a(c)(4).

presence of a severe mental impairment.  (AR 13-15).

The ALJ considered whether the "paragraph C" criteria of Listings 12.04, 12.06, or 12.07 are satisfied, and found that the "paragraph C" criteria are not met because there is insufficient evidence of both (1) medical treatment, mental health therapy, psychosocial support(s), or a highly structured setting that is ongoing and that diminishes the symptoms and signs of the claimant's mental disorder; and (2) marginal adjustment.  (AR 15).

### a. First Functional Area of Understanding, Remembering, or Applying Information

The ALJ found that Plaintiff has a moderate limitation in the functional area of understanding, remembering, or applying information, such that Plaintiff is able to understand and remember simple instructions.  (AR 14).

The ALJ considered Plaintiff's FSIQ score of 64, which he notes was "in the extremely low range, with scores on the Perceptual Reasoning Index, Working Memory Index, and Processing Speed Index also in the extremely low range, but her Verbal Comprehension Index score was only in the borderline range."  (*Id.*)  The ALJ noted Plaintiff's subjective testimony that "sometimes she is not able to comprehend things and she has to read the instructions multiple times to understand them."  (*Id.*)  The ALJ then contrasted the scores and Plaintiff's testimony with Dr. Johnson-Schroetlin's consultative evaluation, which reported that Plaintiff's fund of knowledge "was only slightly impaired and her memory for recently learned information was adequate."  (*Id.*) (citing AR 722-29).  The ALJ then noted that Plaintiff testified that she can read a cereal box and understand the instructions, can understand everything that she watches on TV, and that her healthcare provider consistently noted that she had "normal memory and normal cognitive performance."  (*Id.*)  Finally, the ALJ relied on the fact that on November 2023, Plaintiff was able to follow a three-step command, recall three items after five minutes, was able to drive without complications, along with the facts that Plaintiff graduated from high school and received a passing grade in a college course.  (AR 14).

### b. Second Functional Area of Interacting with Others

The ALJ found that Plaintiff has a moderate limitation in the functional area of interacting with others, such that she is frequently able to interact with supervisors and/or coworkers and she is

10

occasionally able to interact with the public. (*Id.*)

The ALJ considered Plaintiff's medical record, which shows that she was often noted as speaking with a soft voice, reported being withdrawn, and has an anxious affect. (*Id.*) The ALJ further noted that Plaintiff was consistently described as being cooperative and not exhibiting bizarre behavior. (*Id.*)

### c.    Third Functional Area of Concentrating, Persisting, or Maintaining Pace

The ALJ found that Plaintiff has a mild limitation in the functional area of concentrating, persisting, or maintaining pace, such that Plaintiff has the ability to sustain focused attention and concentration sufficiently long enough to permit the timely and appropriate completion of tasks commonly found in work settings with only slight limitation despite her alleged mental impairment. (*Id.*)

The ALJ considered treatment notes that indicate Plaintiff periodically reported feeling "jittery and anxious," but found that "there is minimal indication that she complained of seizure activity after April 2022." (AR 14). The ALJ noted that Plaintiff graduated from high school and reported receiving a passing grade in a college course. (*Id.*) The ALJ further noted that there is "scant indication in the medical record that she complained of panic attacks after the application date" and reported that in November 2023 Plaintiff was driving without complications. (AR 15).

### d.    Fourth Functional Area of Adapting or Managing Oneself

The ALJ found that Plaintiff has a mild limitation in the functional area of adapting or managing oneself, such that Plaintiff is capable of adapting to change or managing herself independently, appropriately, effectively, and on a sustained basis with only slight limitation despite his/her alleged mental impairment. (*Id.*)

The ALJ considered treatment notes that show that Plaintiff reported she was not seeing a therapist, that she had stopped all of her medications without informing her healthcare provider, and that her "insight and judgment were noted as being poor." (*Id.*) The ALJ further noted that Plaintiff's insight and judgment were otherwise generally described as being fair, that Plaintiff is independent as to her activities of daily living and takes care of her farm, and has appropriate grooming. (*Id.*)

11

**2. The ALJ's Steps Three, Four, and Five Determinations**

The ALJ determined that Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 ("the Listings") (step three).  (AR 13-15).

The ALJ assessed Plaintiff's residual functional capacity ("RFC") and applied the assessment at steps four and five.  *See* 20 C.F.R. § 404.1520(a)(4) ("Before we go from step three to step four, we assess your residual functional capacity . . . . We use this residual functional capacity assessment at both step four and step five when we evaluate your claim at these steps.").  The ALJ determined that Plaintiff had the following RFC:

> [T]o perform a full range of work at all exertional levels but with the following nonexertional limitations: the clamant should never be exposed to environmental hazards, such as high exposed places and moving mechanical parts, and open bodies of water; she cannot drive; she is able to understand and remember simple instructions; she is frequently able to interact with supervisors and/or coworkers; she is occasionally able to interact with the public; and she is able to deal with occasional changes in a routine work setting.

(AR 15-16).  The ALJ rejected Plaintiff's subjective testimony as to "the intensity, persistence and limiting effects of these symptoms" as being "not entirely consistent with the medical evidence and other evidence in the record."  (AR 18).

The ALJ then determined that Plaintiff had no past work experience  (step four) but that, given her RFC, she could perform a significant number of jobs in the national economy (step five). including routing clerk, price marker or small parts assembler.  (AR 42).  The ALJ ultimately concluded Plaintiff was not disabled at any time after April 3, 2022, the alleged onset date.  (AR 20).

Plaintiff sought review of this decision before the Appeals Council, which denied review on March 19, 2025.  (AR 1-6).  Therefore, the ALJ's decision became the final decision of the Commissioner.  20 C.F.R. § 404.981.

### III.    LEGAL STANDARD

**A.    Applicable Law**

An individual is considered "disabled" for purposes of disability benefits if they are unable "to engage in any substantial gainful activity by reason of any medically determinable physical or

12

mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). However, "[a]n individual shall be determined to be under a disability only if [their] physical or mental impairment or impairments are of such severity that [they are] not only unable to do [their] previous work but cannot, considering [their] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." *Id.* § 423(d)(2)(A).

"The Social Security Regulations set out a five-step sequential process for determining whether a claimant is disabled within the meaning of the Social Security Act." *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999) (citing 20 C.F.R. § 404.1520). The Ninth Circuit has provided the following description of the sequential evaluation analysis:

> In step one, the ALJ determines whether a claimant is currently engaged in substantial gainful activity. If so, the claimant is not disabled. If not, the ALJ proceeds to step two and evaluates whether the claimant has a medically severe impairment or combination of impairments. If not, the claimant is not disabled. If so, the ALJ proceeds to step three and considers whether the impairment or combination of impairments meets or equals a listed impairment under 20 C.F.R. pt. 404, subpt. P, [a]pp. 1. If so, the claimant is automatically presumed disabled. If not, the ALJ proceeds to step four and assesses whether the claimant is capable of performing [their] past relevant work. If so, the claimant is not disabled. If not, the ALJ proceeds to step five and examines whether the claimant has the [RFC] . . . to perform any other substantial gainful activity in the national economy. If so, the claimant is not disabled. If not, the claimant is disabled.

*Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005). "If a claimant is found to be 'disabled' or 'not disabled' at any step in the sequence, there is no need to consider subsequent steps." *Tackett*, 180 F.3d at 1098 (citing 20 C.F.R. § 404.1520).

"The claimant carries the initial burden of proving a disability in steps one through four of the analysis." *Burch*, 400 F.3d at 679 (citing *Swenson v. Sullivan*, 876 F.2d 683, 687 (9th Cir. 1989)). "However, if a claimant establishes an inability to continue [their] past work, the burden shifts to the Commissioner in step five to show that the claimant can perform other substantial gainful work." *Id.* (citing *Swenson*, 876 F.2d at 687).

**B.    Scope of Review**

"This court may set aside the Commissioner's denial of [social security] benefits [only] when the ALJ's findings are based on legal error or are not supported by substantial evidence in the record

as a whole." *Tackett*, 180 F.3d at 1097 (citation omitted). "Substantial evidence . . . is 'more than a mere scintilla,'" and means only "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 587 U.S. 97, 103 (2019) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)); *see also Ford v. Saul*, 950 F.3d 1141, 1154 (9th Cir. 2020).

"This is a highly deferential standard of review." *Valentine v. Comm'r of Soc. Sec. Admin.*, 574 F.3d 685, 690 (9th Cir. 2009). "The ALJ's findings will be upheld if supported by inferences reasonably drawn from the record." *Tommasetti v. Astrue*, 533 F.3d 1035, 1038 (9th Cir. 2008) (citation omitted). Additionally, "[t]he court will uphold the ALJ's conclusion when the evidence is susceptible to more than one rational interpretation." *Id.*; *see, e.g.*, *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001) ("If the evidence is susceptible to more than one rational interpretation, the court may not substitute its judgment for that of the Commissioner." (citations omitted)).

Nonetheless, "the Commissioner's decision 'cannot be affirmed simply by isolating a specific quantum of supporting evidence.'" *Tackett*, 180 F.3d at 1098 (quoting *Sousa v. Callahan*, 143 F.3d 1240, 1243 (9th Cir. 1998)). "Rather, a court must 'consider the record as a whole, weighing both evidence that supports and evidence that detracts from the [Commissioner's] conclusion.'" *Id.* (quoting *Penny v. Sullivan*, 2 F.3d 953, 956 (9th Cir. 1993)).

Finally, courts "may not reverse an ALJ's decision on account of an error that is harmless." *Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012) (citing *Stout v. Comm'r, Soc. Sec. Admin.*, 454 F.3d 1050, 1055–56 (9th Cir. 2006)). Harmless error "exists when it is clear from the record that 'the ALJ's error was inconsequential to the ultimate nondisability determination.'" *Tommasetti*, 533 F.3d at 1038 (quoting *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 885 (9th Cir. 2006)). "[T]he burden of showing that an error is harmful normally falls upon the party attacking the agency's determination." *Shinseki v. Sanders*, 556 U.S. 396, 409 (2009) (citations omitted).

## IV.   DISCUSSION

Plaintiff asserts three claims of error: (1) the ALJ failed to consider Plaintiff's intellectual disorder at step two and take it into account in the RFC thus the RFC was erroneous; (2) the ALJ failed to consider medical opinions that discussed supportability and consistency factors; and (3) the

ALJ erred in failing to evaluate Plaintiff's subjective symptoms. (*See* Doc. 11 at 6-15).

The Commissioner counters that (1) the ALJ's failure to consider Plaintiff's intellectual disability was harmless error; (2) the ALJ did not err with respect to the medical opinions because the RFC was more restrictive and thus no error was committed, and (3) substantial evidence exists to support the ALJ's finding. (Doc. 13 at 4–10).

The undersigned agrees with Plaintiff and will remand the case for further proceedings on that basis.[7]

**A. The ALJ Committed Harmful Error at Step Two Legal Standard**

**1. Legal Standard**

"At step two of the five-step sequential inquiry, the Commissioner determines whether the claimant has a medically severe impairment or combination of impairments." *Smolen v. Chater*, 80 F.3d 1273, 1289-90 (9th Cir. 1996) (citing *Bowen v. Yuckert*, 482 U.S. 137, 140–41 (1987)). "[A]t the step two inquiry, . . . the ALJ must consider the combined effect of all of the claimant's impairments on [their] ability to function, without regard to whether each alone was sufficiently severe." *Id*. at 1290 (citing 42 U.S.C. § 423(d)(2)(B) and Social Security Ruling ("SSR") 86–8).

"[A]n impairment is not severe if it does not significantly limit [the claimant's] . . . ability to do basic work activities." *Id*. at 1290 (citing 20 C.F.R. §§ 404.1520(c) & 404.1521(a)). *See also* 20 C.F.R. §§ 416.920(c), 416.921(a).

"An impairment or combination of impairments can be found 'not severe' only if the evidence establishes a slight abnormality that has 'no more than a minimal effect on an [individual's] ability to work.'" *Smolen*, 80 F.3d at 1290 (quoting SSR 85–28). Additionally, "an ALJ may find that a claimant lacks a medically severe impairment or combination of impairments only when their conclusion is 'clearly established by medical evidence.'" *Webb v. Barnhart*, 433

---

[7] Because further proceedings will necessitate the re-evaluation of the evidence as a whole, *see infra*, the Court does not reach the issues of the ALJ's consideration of the medical opinions and treatment of Plaintiff's subjective symptoms. *See Hiler v. Astrue*, 687 F.3d 1208, 1212 (9th Cir. 2012) ("Because we remand the case to the ALJ for the reasons stated, we decline to reach [plaintiff's] alternative ground for remand."); *see also Rendon G. v. Berryhill*, No. EDCV 18-0592-JPR, 2019 WL 2006688, at *8 (C.D. Cal. May 7, 2019); *Harris v. Colvin*, No. 13-cv-05865 RBL, 2014 WL 4092256, at *4 (W.D. Wash. Aug. 11, 2014); *Augustine ex rel. Ramirez v. Astrue*, 536 F. Supp. 2d 1147, 1153 n.7 (C.D. Cal. 2008) ("[The] Court need not address the other claims plaintiff raises, none of which would provide plaintiff with any further relief than granted, and all of which can be addressed on remand.").

F.3d 683, 687 (9th Cir. 2005) (citing SSR 85–28); *cf. Ukolov v. Barnhart*, 420 F.3d 1002, 1006 (9th Cir. 2005) (finding that the claimant "failed to meet his burden of establishing disability" where "none of the medical opinions included a finding of impairment, a diagnosis, or objective test results").

"Great care should be exercised in applying the not severe impairment concept." SSR 85 28. "The Commissioner has stated that '[i]f an adjudicator is unable to determine clearly the effect of an impairment or combination of impairments on the individual's ability to do basic work activities, the sequential evaluation should not end with the not severe evaluation step.'" *Webb*, 433 F.3d at 687 (alteration in original) (quoting SSR 85–28).

Ultimately, "[t]he severity regulation increases the efficiency and reliability of the evaluation process by identifying at an early stage those claimants whose medical impairments are so slight that it is unlikely they would be found to be disabled even if their age, education, and experience were taken into account." *Yuckert*, 482 U.S. at 153. In other words, "the step-two inquiry is a *de minimis* screening device to dispose of groundless claims." *Smolen*, 80 F.3d at 1290 (citing *Yuckert*, 482 U.S. at 153–54). Nonetheless, "[t]he plaintiff has the burden of establishing the severity of the impairment." *Cookson v. Comm'r of Soc. Sec.*, No. 2:12–cv–2542–CMK, 2014 WL 4795176, at *2 (E.D. Cal. Sept. 25, 2014); *see, e.g., Burch*, 400 F.3d at 679 ("The claimant carries the initial burden of proving a disability in steps one through four of the analysis.") (citing *Swenson*, 876 F.2d at 687)).

### 2. Analysis

At step two, the ALJ considered Plaintiff's mental impairments. (AR 14). The ALJ found any mental impairments were not severe because they caused no more than "moderate" or "mild" limitations in the four functional areas of (1) understanding, remembering or applying information; (2) interacting with others; (3) concentrating, persisting or maintaining pace; and (4) adapting or managing oneself. (AR 13-15).

Viewing the record as a whole, the medical evidence in this case does not "clearly establish" that Plaintiff lacks a medically severe mental impairment. *Webb*, 433 F.3d at 687. In concluding that Plaintiff's mental impairments were nonsevere, the ALJ improperly (1) failed to explain why

"significant probative evidence was rejected"—specifically with regard to evidence relating to Plaintiff's "borderline" or "extremely low" WAIS-IV and WMS-IV scores, *see Vincent on Behalf of Vincent v. Heckler*, 739 F.2d 1393, 1395 (9th Cir. 1984) (quoting *Cotter v. Harris*, 642 F.2d 700, 706 (3d Cir. 1981))—and (2) improperly selectively highlighted those portions of Plaintiff's records that supported the ALJ's conclusion that the impairments were nonsevere, while downplaying or omitting evidence to the contrary, *see Reddick v. Chater*, 157 F.3d 715, 722–23 (9th Cir. 1998) (An ALJ may not "cherry pick" from a record to support the conclusion, but rather must account for the context of the whole record.); *Gallant v. Heckler*, 753 F.2d 1450, 1456 (9th Cir. 1984) ("Although it is within the power of the [ALJ] to . . . weigh conflicting evidence, he cannot reach a conclusion first, and then attempt to justify it by ignoring competent evidence in the record that suggests an opposite result.").

In addition to ignoring significant probative evidence, the ALJ cherrypicked evidence tending to support his conclusion while ignoring evidence that would tend to undermine his conclusion. For example, the ALJ reasoned that Plaintiff was able to read a cereal box and understand what she watches on TV, as well as noted that her healthcare provider reported that she had "normal memory and normal cognitive performance", while failing to explain how Plaintiff's WAIS-IV  scores ("[b]orderline" to "extremely low" and in a percentile rank from 0.3 to 7 percentile)  and WMS-IV scores (all in the "extremely low" range and in a percentile rank from 0.1 to 0.3 percentile) (AR 726-27) significantly limited Plaintiff's ability to do basic work activities. Furthermore, the ALJ relied on Dr. Johnson-Schroetlin's consultative psychological evaluation that reported that Plaintiff's fund of knowledge was only slightly impaired and her memory for recently learned information was adequate (AR 14), despite the fact that the ALJ later found Dr. Johnson-Schroetlin's opinion only "minimally persuasive." (AR 18). In considering Dr. Johnson-Schroetlin's opinion, the ALJ states that:

> While she stated that the claimant's scores on psychological testing conducted during the evaluation were a good representation of the claimant's ability, these scores were not consistent with the findings from the mental status examination. Notably, Dr. Johnson-Schroetlin reported that the claimant's fund of knowledge was only slightly impaired and her memory for recently learned information was adequate. Dr. Johnson-Schroetlin did not explain this discrepancy. Furthermore, these findings from the mental status examination, which do not support Dr.

> Johnson-Schroetlin's opinion as to the claimant's limitations, are consistent with evidence in the record that she has been observed completing a three-step task and that she has generally been noted as having normal intellectual functioning.

(AR 18). Nonetheless, the ALJ still relied on Dr. Johnson-Schroetlin's opinion to discount the objective evidence of Plaintiff's WAIS-IV and WMS-IV scores.

Plaintiff "bears the burden of proving that ... she has an impairment that meets or equals the criteria of an impairment listed in Appendix 1 of the Commissioner's regulations." *Burch v. Barnhart*, 400 F.3d 676, 683 (9th Cir. 2005) (internal citation omitted). While Plaintiff may not "succeed in proving that [she] is disabled," the ALJ "lacked substantial evidence to find that the medical evidence clearly established [plaintiff's] lack of" a medically severe mental impairment. *Webb*, 433 F.3d at 688. Accordingly, the ALJ's Step Two finding cannot stand. And although courts "may not reverse an ALJ's decision on account of a harmless error," *Buck v. Berryhill*, 869 F.3d 1040, 1048 (9th Cir. 2017), harmless error only "exists when it is clear from the record that 'the ALJ's error was inconsequential to the ultimate nondisability determination.'" *Tommasetti*, 533 F.3d at 1038 (quoting *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 885 (9th Cir. 2006)). Because the ALJ ended his evaluation of Plaintiff's claim at step two, his error at step two is de facto harmful. *See Burch*, 400 F.3d at 682; *Nunes v. Saul*, No. 2:17-CV-2683-EFB, 2019 WL 4670767, at *2 (E.D. Cal. Sept. 25, 2019).

**B.    Remand For Further Proceedings is Appropriate**

In a case where the ALJ's determination is not supported by substantial evidence or is tainted by legal error, the court may remand the matter for additional proceedings or an immediate award of benefits. Remand for additional proceedings is proper where (1) outstanding issues must be resolved, and (2) it is not clear from the record before the court that a claimant is disabled. *See Benecke v. Barnhart*, 379 F.3d 587, 593 (9th Cir. 2004).

Here, the Court finds that remand for further proceedings is warranted. *See, e.g., Bunnell v. Sullivan*, 947 F.2d 341, 348 (9th Cir. 1991) (affirming a remand for further proceedings where the ALJ failed to explain with sufficient specificity the basis for rejecting the claimant's testimony); *Byrnes v. Shalala*, 60 F.3d 639, 642 (9th Cir. 1995) (remanding the case "for further findings evaluating the credibility of [the claimant's] subjective complaints"). On remand, the

Commissioner shall further develop the record, as outlined above, as to whether Plaintiff's mental impairments result in one extreme limitation or two marked limitations in a broad area of functioning. The ALJ is also free to develop the record in other ways as needed. The Commissioner is cautioned and reminded of the general principle that the ALJ cannot substitute his lay opinion for that of the medical experts. *See generally, Tackett,* 180 F.3d at 1102-03 (ALJ may not substitute his or her own opinion instead of relying on the opinions of medical professionals); *Banks v. Barnhart*, 434 F.Supp.2d 800, 805 (C.D. Cal. 2006) ("ALJ cannot arbitrarily substitute his own judgment for competent medical evidence [ ], and he must not succumb to the temptation to play doctor and make his own independent medical findings")

## V.    CONCLUSION AND ORDER

Based on the foregoing, the Court finds that the ALJ's decision is not supported by substantial evidence and is therefore VACATED, and the case is REMANDED to the ALJ for further proceedings consistent with this Order. The Clerk of this Court is DIRECTED to enter judgment in favor of Plaintiff Haley Marie Johnson and against Defendant Frank Bisignano, Commissioner of Social Security.

IT IS SO ORDERED.

Dated:    **June 2, 2026**

_____
UNITED STATES MAGISTRATE JUDGE

19